# IN THE COURT OF APPEALS OF IOWA

No. 19-2092
Filed March 4, 2020

**IN THE INTEREST OF A.D.,**
**Minor Child,**

**D.D., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A father appeals the termination of his parental relationship with his three-year-old daughter. **AFFIRMED.**

Dale Mays of Mays and Clausen Law Office, Newton, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Paul White, Juvenile Public Defender's Office, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

A.D. has been in a kinship placement for two of her three years of life. Her parents lost custody because their substance abuse prevented them from providing a safe and stable home for her. But by the time of the hearing on the termination of parental rights, her father—Devin—was seeking treatment and had been sober for nearly a year. Facing a difficult decision, the juvenile court found it was in A.D.'s best interests to terminate parental rights so she could find permanency through adoption. Devin appeals that decision.

Although it is a close call, after our full review of the record, we reach the same conclusion as the juvenile court.[1] The prospect of waiting another six months for permanency is not in A.D.'s best interests.

### I.  Facts and Prior Proceedings

A.D. tested positive for methamphetamines at her birth in September 2016. Because of that test, the Iowa Department of Human Services (DHS) removed A.D. from her parents' custody at the hospital and placed her with the foster family who adopted her half-siblings.[2] The birth parents received court-ordered services, and the DHS returned A.D. to their home in September 2017.

But one year later, a welfare check on A.D. revealed her parents were caring for her while extremely intoxicated. Police found both parents passed out.

---

[1] We review child-welfare cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The juvenile court's fact findings do not bind us, but we give them weight, particularly on credibility issues. *Id.* Our top concern is A.D.'s best interests. *See In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

[2] The foster parents explained the DHS considered their family to be a kinship placement because they had adopted the older children of A.D.'s mother. The older children have a different father.

Devin's blood alcohol content tested at 0.315—more than three times the legal limit for operating while intoxicated (OWI). In October 2018, A.D. went back to the same foster home, where she stayed for the remainder of the case. A few months later, Devin picked up his third OWI conviction.

Throughout 2019, A.D. struggled with transitions between parental visits and her foster home. Her foster mother reported A.D. saying she was "scared" and hiding when the FSRP (family safety, risk and permanency) worker arrived to transport her to visitation. A.D. also grappled with her emotions after returning from those visits. A.D.'s play therapist likewise noticed her ambivalence about continuing to see her parents. In a November 2019 letter, the therapist described the theme of A.D.'s sessions as a "consistent sadness regarding visitation" with her parents. While A.D. wanted to have visits, the girl said they lasted "too long."

At the termination-of-parental-rights hearing in November 2019, both parents acknowledged they were not in a position to resume care of A.D. *See* Iowa Code § 232.116(1)(h)(4) (2019). Devin was living at a rehabilitation center. But he had lined up a new residence at a "recovery house" and secured employment at an upscale restaurant. The juvenile court applauded Devin for his current commitment to therapy. The juvenile court also recalled the parents' progress in 2016 and 2017 but emphasized: "They relapsed, hard and quickly and significantly. Resulting in [A.D.] not being supervised by sober and safe caretakers in fall 2018." The court had "no doubt" the parents loved A.D. Yet the court decided her best interests were served by remaining in the foster home with her biological siblings where her physical and emotional needs were being met. *See* Iowa Code § 232.116(2). Devin contests that decision on appeal.

## II.     Analysis

Devin advances two contentions: (1) we should delay permanency for six months and (2) termination of his parental rights is not in A.D.'s best interests. We will address each claim in turn.

### A.     Six-Month Delay

To continue a child's placement for an additional six months, Iowa Code section 232.104(2)(b) requires the court to determine the need for removal will no longer exist at the end of the extension. Devin argues A.D. would not suffer additional harm if the court granted a six-month extension to provide him time to show he had "gotten his alcoholism under control."

Devin compares his situation to *In re K.M.*, where our court found a child would not experience disruption from a delay in permanency. No. 16-0795, 2016 WL 4379375, at *7–9 (Iowa Ct. App. Aug. 17, 2016). As we said in *K.M.*, "A good deal of prognostication is required in termination cases." *Id.* at *9. There, the twenty-year-old mother had completed several substance-abuse and life-skills programs in prison to prepare for parenting her child upon her imminent release. We expressed optimism she had matured and would succeed in her reunification efforts. *Id.* In the meantime, K.M. was secure in her grandmother's care. *Id.*

Neither we nor the juvenile court could predict a similar resolution here. Devin's past performance gives insight into the quality of future care he is capable of providing. *See In re L.L.*, 459 N.W.2d 489, 493–94 (Iowa 1990). After regaining custody of A.D in 2017, his dramatic relapse in the fall and winter of 2018 is testament to the continued danger his substance abuse poses to A.D. Unlike the mother in *K.M.*, Devin cannot attribute his alcohol-related difficulties to the bad

judgment of a juvenile. He was thirty-nine years old when A.D. was born. The DHS case supervisor believed "Devin has minimized the trauma that [A.D.'s] two removals and his incarceration during this case has caused her." And Devin has not demonstrated his ability to maintain long-term sobriety outside a prison or treatment setting. Under these circumstances, we cannot muster confidence that the need for removal would no longer exist at the end of a six-month extension.

**B.** **Best Interests**

Meanwhile, A.D. continued to be anxious about visiting her birth parents, according to her therapist and her foster mother. That therapist stressed the importance of establishing a stable environment for A.D. Delaying permanency contradicts those therapeutic recommendations.

Still, Devin argues termination of his rights is not in A.D.'s best interests because she has "demonstrated a bond with her father." He emphasizes he has displayed good parenting skills during supervised visits. Devin makes valid points. But, while important, his positive relationship with A.D. is not the only consideration in our best-interest assessment.

In making the best-interests determination, we give primary consideration to the child's safety, the best placement for furthering her long-term nurturing and growth, as well as her physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). That consideration includes a child's integration into her foster family and their willingness to adopt. *See* Iowa Code § 232.116(2)(b). Safety and the need for a permanent home mark the "defining elements" in a child's best interests. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

At the termination hearing, A.D.'s guardian ad litem (GAL) supported the State's termination petition and stressed "the length of time this child has been out of the care of the parents is significant." The GAL appreciated the efforts of the foster parents as going "above and beyond" in caring for A.D. and her siblings. We give weight to that professional opinion. At the same time, we recognize Devin has taken positive steps toward being a stable parent. It's just that those steps come late in the life of the case and do not show a durable stability. Under these circumstances, termination of parental rights serves A.D.'s best interests. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (declining to gamble with a child's future by asking her to "continuously wait for a stable biological parent," particularly at a tender age).

**AFFIRMED.**